CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILE, VA
FILED

AUG 0 6 2020

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
**CHARLOTTESVILLE DIVISION**

'20 AUG 6 AM 3:40

Joseph P. Allen, IV,                    )
                                        )
        Plaintiff,                      )
                                        )    Case No. 3:20-mc-00008-GEC
                                        )
Brown Advisory LLC *et al*,             )
                                        )
        Defendant                       )
_____)

## OPPOSITION OF ATTORNEY PETER B. WORK TO BROWN ADVISORY'S MOTION TO COMPEL PRODUCTION OF HIS AND HIS CLIENTS' DOCUMENTS PURSUANT TO FED. R. CIV. PRO. 45

### Introduction

The undersigned, Peter B. Work ("Mr. Work"), appearing *pro se* for purposes of opposing Movant Brown Advisory's ("Brown Advisory") motion to compel, was the initial attorney, and currently is one of several attorneys, for Dr. Joseph P. Allen ("Dr. Joe Allen") and Dr. David T. Allen ("Dr. Dave Allen") in a number of legal matters.[1] Those matters include, among others: (1) Dr. Joe Allen's action against Brown Advisory and Elizabeth Key ("Ms. Key") pending in federal district court in Indiana for breach of contract and breach of fiduciary duty which is the case through which Brown Advisory served its subpoena on Mr. Work; (2) Brown Advisory's Interpleader action against Drs. Joe and Dave Allen, and Ms. Key

---

[1]     Mr. Work is an attorney admitted to practice in the District of Columbia, but not admitted in this Court. He is filing this Opposition only as a *pro se* person.

1

pending in federal district court in Maryland; (3) Ms. Key's now-dismissed Guardianship Petition involving Dr. Joe Allen in the District of Columbia Superior Court, Probate Division, and (4) Ms. Key's defamation action against Dr. Dave Allen pending in federal district court in Maryland.

Brown Advisory's motion to compel ignores Mr. Work's legal work for the Allens and incorrectly refers to him as merely a "fact witness" who is in "possession, custody, or control of at least some responsive, non-privileged documents pertaining to [Dr. Joe Allen's] claims." (*See* BA Motion at 3 and 10.) The motion fails, however, to identify any non-privileged facts that Brown Advisory believes Mr. Work possesses that make him a "fact witness" in this case, or to identify any "non-privileged documents" in Mr. Work's possession that it believes pertain to this case. Nor does it (1) explain how these items, to the extent they exist, are not available from less-burdensome sources, or (2) identify any legal precedent that would make Mr. Work, as a counsel for Drs. Joe and Dave Allen in this case and various other legal proceedings and matters, subject to discovery.

**Facts**

### 1. Drs. Joe and Dave Allen's January 2019 Engagement of Mr. Work as an Uncompensated *Pro Bono* Attorney in Multiple Legal Matters

As described in Mr. Work's letters to Brown Advisory's principal attorney, David Hamilton, of June 8, June 18, and June 21, 2020 (attached to BA's motion as Exhs. 5, 7, and 9, respectively, and in the declarations of Drs. Joe and Dave Allen and Mr. Work, attached hereto as Exhs. 1,2, and 3, respectively), he met with Drs.

2

Joe and Dave Allen in Washington, D.C. on January 24, 2019. The meeting was telephonically arranged in advance by Dr. Dave Allen, and its articulated purpose was to discuss various legal issues that Drs. Joe and Dave Allen were facing or anticipating, including, without limitation, issues with Brown Advisory, with Ms. Key, and with the senior living facility and its affiliated physicians in Washington, D.C. where Dr. Joe Allen then resided.

Mr. Work had known the Allen brothers since the late 1950s when the three of them were students and wrestling teammates at DePauw University in Greencastle, Indiana. After their time together at DePauw, Dr. Joe Allen received a Ph.D in experimental physics from Yale University, was named one of the first scientist/astronauts in NASA's space program and later a NASA Deputy Director, and then became a successful business executive in the aeronautics and space industry. Dr. Dave Allen earned a medical degree from Case Western Reserve University and became a prominent public health official and then a practicing physician in Louisville, Kentucky. Mr. Work graduated from the University of Chicago Law School and, following an active duty tour as a Marine Corps officer, practiced law full-time in Washington, D.C. from 1968 until 2015. He is a founding partner of the DC-headquartered international law firm Crowell & Moring, LLP. After retiring from Crowell & Moring in 2015, Mr. Work has continued to provide legal services on a strictly *pro bono* basis to individuals and non-profit organizations, and he remains a member of the D.C. Bar. He generally works out of his home office in Madison County, Virginia, but, as a founding partner of Crowell

& Moring, he has access to the firm's Washington, D.C. facilities when he needs
them.

At their January 24, 2019 meeting in Washington, D.C. it was agreed among
Drs. Joe and Dave Allen and Mr. Work that Mr. Work would provide legal advice
and legal services on an uncompensated, *pro bono* basis to both Drs. Allen in
connection with their various looming legal issues. With this oral agreement, the
Allens and Mr. Work established attorney-client relationships which continue to
this day and which give rise to privileges and protections regarding documents and
communications that the Allens, as Mr. Work's clients, decline to waive.

Brown Advisory has apparently inferred from the circumstances of the
January 2019 meeting, as described to its counsel in correspondence from Mr. Work,
that he is only "informally" representing Drs. Joe and Dave Allen and is doing so in
the role of a friend, not an attorney. (*See* BA Motion at pp. 6-7 and Exh. 6.) That is
not the case, as Mr. Work explained to Brown Advisory's lead attorney, David
Hamilton, in a June 18, 2020 letter (*see* BA motion at Exh. 7):

> My attorney-client relationship with the Allens is informal only
> in the sense that I am providing my services on a strictly pro
> bono basis and thus do not record my time or tasks and do not
> bill for my services. Otherwise, I expect that my attorney-client
> relationship with the Allens in this matter [referring to BA's
> Interpleader action] and related matters is little or no different
> from your-attorney-client relationship in these matters with
> Brown Advisory.
>
>          * * *
>
> The nature of my friendship with Joe and Dave Allen is
> immaterial to my attorney-client relationship with them.
> Indeed, "the relationship between attorney and client hinges on

the client's intention to seek legal advice and his belief that that he is consulting an attorney." *Jones v. United States*, 828 A.2d 169, 176 (D.C. 2003) citing 8 Wigmore Sec. 2302; Weinstein's Fed. Evidence Sec. 503.11(1) 2d ed. 1998). The issue ultimately is what [the client] believed when he was seeking advice and whether his belief about the confidentiality of the conversation is reasonable. *Id.*, (citing Weinstein's Federal Evidence Sec. 503.11[1]). There is no question that the Allens engaged me to provide legal advice on the subject matters with the expectation of confidentiality; thus we have an attorney-client relationship.

\* \* \*

You mention specifically that "no written engagement letter defining my representation [of the Allens] exists." As stated in my June 8 letter, I do not believe such an agreement is necessary in the circumstances. "It is well-established that neither a written agreement nor the payment of fees is necessary to create an attorney-client relationship." *In re Lieber*, 442 A.2d 153, 156 (D.C. 1982).

## 2. Summary of Legal Services Performed by Mr. Work for Drs. Joe and Dave Allen Between January 2019 and the Present

### a. Issues Relating to Dr. Joe Allen's Treatment and Care at, and Dr. Dave Allen's Dealings with, the Grand Oaks Senior Living Community in Washington, D.C. and to Dr. Joe Allen's April 2019 Relocation from Grand Oaks to Wellbrooke of Crawfordsville in the Allens' Hometown of Crawfordsville, Indiana

- Consultations with Drs. Joe and Dave Allen.

- Consultations with Stuart Weliever, Dr. Joe Allen's Crawfordsville, Indiana-based attorney.

- Consultations with Robert Gazzola, a Washington, D.C. attorney whom Mr. Work identified to represent Drs. Joe and Dave Allen in certain D.C.-related matters.

- Preparation of draft correspondence to Grand Oaks and affiliated physicians and to the DC Medical Board for Dr. Dave Allen and Mr. Weliever.

- Drafting, review, and editing of a draft complaint against Grand Oaks and its affiliated physicians.

**b. Issues Relating to Litigation in Indiana and Maryland Between Drs. Joe and Dave Allen and Brown Advisory**

- Consultations with Drs. Joe and Dave Allen.

- Consultations with Stuart Weliever.

- Consultations with Dr. Joe Allen's Texas-based attorney Jim Ullrich.

- Drafting, review, and editing of correspondence for Mr. Weliever to Brown Advisory's counsel, David Hamilton.

- Identification of and consultations with the Baltimore-based law firm Nathans & Biddle, LLP and its partner Booth M. Ripke to represent Drs. Joe and Dave Allen in Brown Advisory's Baltimore Interpleader action and related matters.

- Drafting, review, and editing of pleadings and correspondence relating to Brown Advisory's Baltimore Interpleader action against Drs. Joe and Dave Allen.

- Drafting, review, and editing of a complaint against Brown Advisory on behalf of Dr. Joe Allen for filing in the Montgomery County, Indiana Circuit Court.

- Consultations with the Indianapolis, Indiana-based law firm Dentons Bingham Greenbaum LLP and its partners Brian W. Welch and Briana L. Clark and associate Elizabeth Traylor, who undertook legal representation of Dr. Joe Allen in the Indiana case following Brown Advisory's removal of Dr. Joe Allen's Indiana state court action to federal district court in Indianapolis.

- Drafting, review, and editing of correspondence and pleadings relating to the Indiana case following its removal to federal district court.

### c. Issues Relating to Disputes Between Drs. Joe and Dave Allen and Elizabeth Key

- Consultations with Drs. Joe and Dave Allen.

- Consultations with attorneys representing Drs. Joe and/or Dave Allen, including Stuart Weliever, Robert Gazzola, Jim Ullrich, Booth Ripke, Brian Welch, Briana Clark, and Elizabeth Traylor.

- Drafting, review, and editing of correspondence for Mr. Weliever to attorneys for Ms. Key.

- Drafting, review, and editing of pleadings relating to Ms. Key's Guardianship Petition in the D.C. Superior Court, Probate Division.

- Preparation for a preliminary hearing on Ms. Key's Guardianship Petition.

- Drafting, review, and editing of pleadings opposing reconsideration of the D.C. Court's Order dismissing Ms. Key's Guardianship Petition.

- Consultations with the Towson, Maryland-based law firm Mann & Risch and its partner Nate Risch, as a counsel for Dr. Dave Allen, in Brown Advisory's Interpleader action and Ms. Key's Maryland Defamation action against Dr. Dave Allen.

- Drafting, review, and editing of pleadings relating to Ms. Key's Defamation action against Dr. Dave Allen.

### d. Issues Relating to Dr. Joe Allen's Descendants' Trust

- Consultations with Drs. Joe and Dave Allen.

- Consultations with Jim Ullrich, Stuart Weliever, and attorneys at Nathans & Biddle and Denton Bingham Greenbaum.

- Review of Dr. Joe Allen's Descendants' Trust and documents relating thereto.

- Investigation of changes to Dr. Joe Allen's Descendants' Trust which were effected without his knowledge or consent during his residency at Grand Oaks.

e. **Issues Relating to Real Estate Properties Currently and Formerly Owned by Dr. Joe Allen**

- Consultations with Drs. Joe and Dave Allen.

- Consultations with Jim Ullrich and Stuart Weliever.

- Consultations with attorneys at Nathans & Biddle and Dentons Bingham Greenbaum.

- Review of documents relating to Dr. Joe Allen's real estate properties and the sale of some of those properties.

f. **Issues Relating to Dr. Joe Allen's Mental Competency To Litigate and To Execute Advance Directives**

- Consultations with Drs. Joe and Dave Allen.

- Consultations with attorneys at Nathans & Biddle and Dentons Bingham Greenbaum.

- Drafting, review, and editing of pleadings and correspondence concerning Dr. Joe Allen's mental competence.

3. **Court Appearances**

Brown Advisory's motion (at p. 3) states correctly that "To date, Mr. Work has not filed an appearance or sought to be admitted *pro hac vice* in either the Maryland Interpleader action or the Indiana action on behalf of either JP Allen or DT Allen." Mr. Work's clients have not asked him to do so, and the existence of an attorney-client relationship is not dependent upon an entry of appearance. Mr. Work did, however, enter an appearance as Dr. Joe Allen's counsel in the D.C. Guardianship Petition proceeding when it appeared that it might be necessary for him to represent Dr. Allen at a preliminary hearing on the Petition. Ultimately, however, the Court dismissed the Petition without a hearing.

### 4. **Brown Advisory's Nine Document Requests**

The document subpoena Brown Advisory caused to be served upon Mr. Work on May 28, 2020 requested nine categories of documents (*see* BA Motion at p. 5). These nine document categories are addressed individually below:

(1) <u>An engagement letter between Mr. Work and J.P. Allen or D.T. Allen</u>

Mr. Work's June 18, 2020 letter to Brown Advisory's David Hamilton (*see* BA Exh. 7 at 2) pointed out with regard to an engagement letter:

> As stated in my June 8 letter, I do not believe such an agreement [*i.e.*, an engagement letter] is necessary in the circumstances. "It is well established that neither a written agreement nor the payment of fees is necessary to create an attorney-client relationship." *In re Lieber*, 442 A.2d 153, 156 (D.C. 1982).

Neither Mr. Hamilton nor other counsel representing Brown Advisory responded to the above-quoted statement.

(2) <u>All documents and communications between Mr. Work and J.P. Allen pertaining to Brown Advisory</u>

To the best of Mr. Work's knowledge and belief, he possesses no written documents or communications with Dr. Joe Allen pertaining to Brown Advisory. His communications with Dr. Joe Allen pertaining to Brown Advisory have all been oral.

(3) <u>All documents and communications between Mr. Work and D.T. Allen prior to April 12, 2019 pertaining to Brown Advisory</u>

Mr. Work considers all documents and communications between himself and Dr. Dave Allen after they entered into an attorney-client relationship on January

24, 2019 to be protected by the attorney-client privilege and, in many cases, subject
to the work product doctrine.

> (4) All documents and communications between Mr. Work and
>     Defendant Elizabeth Key pertaining to Brown Advisory

There are no such documents or communications.

> (5) All documents and communications between Mr. Work and
>     non-party Jim Ullrich pertaining to Brown Advisory

Mr. Work considers all documents and communication between himself and
Dr. Joe Allen's Texas-based attorney Jim Ullrich to be protected by the attorney-
client privilege and, in many cases, subject to the work product doctrine.

> (6) All documents and communications between Mr. Work and the non-party
>     law firm of Arent Fox LLP pertaining to Brown Advisory

Mr. Work has had a single email communication with Lynn Perle, a Counsel
with Arent Fox's Washington, D.C. office.  Mr. Work is producing his email to Ms.
Perle as Exh. 4 hereto.

> (7) All documents or communications between Mr. Work
>     and Dr. Eric T. Drogin

There are no such documents or communications.

> (8) All non-privileged documents and communications between Mr. Work
>     and Mr. Weliever

There are no such documents or communications.

> (9) All non-privileged documents and communications between Mr. Work
>     and the law firm Dentons Bingham Greenbaum LLP

There are no such documents or communications.

### 5. Brown Advisory's Purported Good Faith Efforts To Resolve the Discovery Dispute with Mr. Work

Brown Advisory asserts in its motion (at p. 1) that "Despite [Brown Advisory's] good faith efforts to resolve the dispute, Mr. Work has refused to produce any documents responsive to the subpoena or a privilege log for responsive documents he withholds based on his improper and insufficient objections." Brown Advisory further asserts in its motion (p. at 3) that Mr. Work has "wholly refused . . . . to sufficiently articulate his objections to the subpoena, or to provide a privilege log."

Mr. Work, for his part, is unaware of any efforts by Brown Advisory to "resolve the dispute." He, on the other hand, has written three letters to Brown Advisory's lead counsel, David Hamilton, (*see* BA Exhs. 5, 7, and 9) fully explaining the formation and existence of his attorney-client relationships with Drs. Joe and Dave Allen and the privileges and protections associated with documents and communications generated in connection with those relationships, and (2) articulating why Brown Advisory's demand that Mr. Work provide a privilege log is unwarranted, unprecedented, and unduly burdensome. On the privilege log issue, Mr. Work provided his perspective as follows in his June 21, 2020 letter to Mr. Hamilton (*see* BA's Exh. 9):

> [The] issue is whether the attorneys for one party in litigation (in this case Womble Bond representing Brown Advisory) may subpoena documents in the possession or control of counsel representing an opposing party (in this case me representing Joe and Dave Allen), and may insist, where the documents are privileged or protected, that opposing counsel producer a privilege log.

11

I have practiced law for many years, but this is the first time I
have encountered such a demand. Moreover, brief research has
not yielded any instance in which a court has imposed such a
requirement on opposing counsel. If you know of specific
relevant precedent for Womble Bond's demand, please let me
know what it is.

Rather than responding to Mr. Work's above-quoted June 21, 2020 letter and

identifying precedent for its extraordinary privilege log demand, Brown Advisory's

counsel remained silent for a month, until July 23, 2020, and then filed their motion

to compel, citing no pertinent legal precedent bearing upon the question Mr. Work

had raised in his letter.

### 6. Dr. Dave Allen's Alleged Production of a "Substantial Number of Unredacted Communications" with Mr. Work

Finally, Brown Advisory argues (at 10) that "One of Mr. Work's own

purported clients, DT Allen, has already produced a substantial number of

unredacted communications with Mr. Work . . . ." In advancing this argument,

Brown Advisory ignores the clawback provisions of the Case Management Plan for

this case which, to facilitate the rapid exchange of documents, requires a party

receiving privileged or protected documents from an opposing party to return them.

*See* ECF No. 37 at 6. Thus, to the extent privileged communications were

inadvertently produced, Brown Advisory has a duty to advise counsel for Dr. Dave

Allen of each such document and, if requested, return the documents. To the

extent, if any, that Dr. Allen produced any non-privileged communications with Mr.

Work, there is no need for Mr. Work to produce them as well.

## ARGUMENT

I.  **Mr. Work Has Demonstrated the Establishment and Existence of Attorney-Client Relationships, Dating From Late January 2019 and Continuing to the Present, Between Himself and Drs. Joe and Dave Allen, Respectively**

Brown Advisory's motion to compel does not directly challenge premise that Drs. Joe and Dave Allen established attorney-client relationships with Mr. Work in their January 24, 2019 meeting in Washington, D.C.  Instead, the motion proceeds on the unsupported factual assumptions that:

(1) Mr. Work is merely a "fact witness" who has never identified himself as counsel for Drs. Joe and/or Dave Allen (*see* BA Motion at pp. 3, 10);

(2) "During the summer of 2019, Dr. Joe Allen was purportedly represented by Stuart K. Weliever, an attorney in Indiana," and Dr. Dave Allen, "on information and belief. . .was not represented by counsel during this period" (*see* BA Motion at p. 2); and

(3)  To the extent, if any, that Mr. Work did represent the Allens, he did so only "informally," "as a friend," not as an attorney, *see* BA Motion at pp. 6-7.

The attached declarations of Drs. Joe and Dave Allen and Mr. Work (respectively Exhs. 1-3 hereto) confirm Mr. Work's representations to Brown Advisory's counsel concerning the establishment of attorney-client relationships between himself and Drs. Joe and Dave Allen in January 2019.  And Mr. Work directly addressed Brown Advisory's argument that he has been acting in the role of a friend, not an attorney, in his June 18, 2020 letter to Brown Advisory's counsel, Mr. Hamilton.  That letter is Exh. 7 to BA's Motion, and it is quoted above at p. 4.

## II. Brown Advisory Has Cited No Precedent For Requiring Mr. Work, as Counsel for Drs. Joe and Dave Allen in This Case and Various Other Legal Matters, to Produce Privileged and/or Protected Documents or, Alternatively, to Produce a Privilege Log

Mr. Work, in the last of his three pre-motion letters to Brown Advisory's Mr.

Hamilton (*see* BA's Motion at Exh. 9), invited Brown Advisory to cite precedent for a

court ordering counsel for one party to a litigation to produce documents in their

possession to counsel for the opposing party or, where the documents are privileged

or protected, to produce a privilege log. Brown Advisory did not respond to Mr.

Work's invitation and has cited no such precedent in its motion. Moreover,

completely disregards the fact that most courts, including this Court and other

district courts in the Fourth Circuit, are adverse to enforcing subpoenas *duces*

*tecum* or deposition subpoenas served by counsel for one party in a litigation on

counsel for an opposing party and have done so only in extraordinary

circumstances. *See, e.g., McAirlaids, Inc., v. Kimberly-Clark Corporation*, 2014 U.S.

Dist. LEXIS 200135 (W.D. Va. Oct. 29, 2014); and *Rice v. Rutledge Rd. Assocs.* ,

2016 U.S. Dist. LEXIS 78560 (W.D. N.C. June 16, 2016).

In *McAirlaids v. Kimberley-Clark*, this Court considered a motion for a

protective order precluding the deposition of Kimberly-Clark's in-house litigation

counsel. The Court granted the protective order, stating (at 11) that: "Deposing an

opponent's counsel is disfavored by the courts, and the request to depose counsel

itself constitutes good cause to obtain a Rule 26(c) protective order." In reaching

this conclusion, the Court relied on the Eighth Circuit's decision in *Shelton v.*

*American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1987), which it called "the seminal

case setting the legal standard for a party seeking to depose an opposing party's attorney," and it applied a three-part test first articulated in *Shelton* to determine whether to allow the deposition. The *Shelton* test required the party seeking a deposition to establish that: (1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and non-privileged; and (3) the information is crucial to the preparation of the case.

In *Rice v. Rutledge Rd. Assocs.*, the district court in North Carolina applied the *Shelton* tests to a subpoena *duces tecum*. The subpoena was served on Burt Langley, a law firm representing defendant Gulfstream Capital Corporation. As in *McAirlaids*, the *Rice* court applied the *Shelton* tests and denied the plaintiff's motion to compel production, concluding (at 10) that:

> [T]he undersigned is not persuaded that the likely benefit of the relief requested by Plaintiff outweighs the burden and expense, or that it is proportional to the needs of the case. In particular, Burt Langley contends, and Plaintiff has not refuted, that some or all of the information requested by the subpoena has already been provided. The undersigned finds that it is likely more appropriate, efficient, and cost-effective for Plaintiff to first seek relevant and non-privileged discovery from the other parties in this action before seeking, or duplicating a search with non-parties.

The *Rice* court (at 9) also noted facts, such as exist in this case as well, that:

> Burt Langley argues that [its client] Gulfstream has already voluntarily produced . . . non-privileged communications responsive to the Burt Langley subpoena, and that Plaintiff has not suggested that such production was incomplete, nor has she requested any additional documents from Gulfstream.

*See* Brown Advisory's motion at 10-11.

15

Courts in other circuits have similarly applied the *Shelton* tests in denying

subpoenas *duces tecum* and deposition subpoenas served by counsel for one party on

counsel for an opposing party.  For example, the District of Colorado in *Kirzhner v.*

*David Silverstein*, 20112 U.S. Dist. LEXIS 40467 (D. Colo., April 5, 2011), denied a

subpoena *duces tecum* where the movant defendants had made none of the

showings required under *Shelton,* and it observed (at 8) that:

> the defendants are engaged in discovery abuse by attempting to
> require [plaintiff's law firm] to prepare a privilege log justifying its
> redaction or refusal to produce privileged documents from trial
> counsels' file.  Such an undertaking would be enormous; is
> unreasonably burdensome and intended to be harassing and vexatious;
> and would unnecessarily expand the scope and cost of litigation.

In this case, Brown Advisory plainly has not satisfied the *Shelton* tests and

has made no effort to do so.  Its myopic perspective, as articulated in its

correspondence to Mr. Work and its current motion to compel, is that Mr. Work is

just another "fact witness," not an opposing attorney, and, as such, is subject to

normal discovery under the Federal Rules.

**III.    Requiring Mr. Work to Prepare a Privilege Log on All of the
Hundreds of Privileged Emails He Has Sent and Received in
Connection With His Representation of Drs. Joe and Dave Allen over
a 19-Month Period, and All of the Privileged Pleadings and Other
Documents He Has Drafted, Reviewed, and Edited, Would Be
Unreasonably Burdensome**

As in the *Kirzhner* decision discussed in the preceding section, a requirement

that Mr. Work prepare a privilege log on all of the hundreds of privileged documents

and communications he has sent, received, drafted, reviewed, and edited would

plainly be "unreasonably burdensome," "harassing," and "vexatious" and would

"would unnecessarily expand the scope and cost of litigation." Brown Advisory's motion does not discuss these unavoidable impacts in its motion or make any effort justify them in the context of this case.

## CONCLUSION

For the reasons stated above, Mr. Work respectfully requests that the Court deny Brown Advisory's motion to compel.

Respectfully submitted,

Peter B. Work, *pro se*

1326 Beautiful Run Road
Aroda, Virginia 22709
Tel: (540) 672-5539
Email: work.peterb@gmail.com

## CERTIFICATE OF SERVICE

I, Peter B. Work, appearing *pro se*, hereby certify that the forgoing document and exhibits thereto were physically filed with the Court on August 6, 2020, and were served via first class mail on the following lead counsel for the movant, Brown Advisory:

> David B. Hamilton
> Womble Bond Dickinson (US), LLP
> 100 Light Street
> 26th Floor
> Baltimore, Maryland 21202

Peter B. Work